IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CYNTHIA A. EVANS,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner, Social Security Administration,<br><br>        Defendant. | Case No. 5:12-CV-06259-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF Nos. 23, 24] |

Plaintiff Cynthia A. Evans ("Evans") appeals a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are the parties' cross-motions for summary judgment, which have been fully briefed. *See* ECF Nos. 23-25. Upon consideration of the briefing[2] and for the reasons set forth below, the Court DENIES Evans's motion and GRANTS the Commissioner's motion.

---

[1] Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted as the defendant in this action in place of her predecessor, Michael J. Astrue. *See* Fed. R. Civ. P. 25(d).

[2] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

## I. BACKGROUND

Evans was born in 1951. Admin. R. ("AR") 105. She completed one year of college in order to obtain a certificate in bookkeeping. AR 28. She last worked on August 3, 2008, at which time she was an accounts receivable supervisor at a skilled nursing facility. AR 28, 42, 124. She had held the accounts receivable supervisor job for approximately thirteen years. AR 124. On February 8, 2011, Evans applied for a period of disability and disability insurance benefits, alleging that she had become disabled on July 12, 2010, at the age of fifty-eight. AR 105. She asserted disability resulting from pain in her legs, feet, hands, elbows, shoulders, and back; dizziness and nausea; diabetes; neuropathy; fibromyalgia; poor memory; and short attention span. AR 32-34, 37.

Evans's application was denied initially and upon reconsideration. AR 12. An Administrative Law Judge ("ALJ") conducted a hearing on May 10, 2012. *Id.* The ALJ heard testimony from Evans and from a vocational expert. *Id.* On July 23, 2012, the ALJ issued a written decision concluding that Evans was not disabled and thus was not entitled to disability insurance benefits. AR 12-21. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. AR 1. Evans now seeks judicial review of the denial of benefits.

## II. LEGAL STANDARD

### A.   Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational

1 interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523;
2 *Drouin*, 966 F.2d at 1258.

### B.     Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id*. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. *Id*. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment in the Listings. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled; if not, the analysis proceeds to step four. *Id*. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to do his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled; if not, the analysis proceeds to step five. *Id*. At step five, the ALJ determines whether the claimant can do other jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id*. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray,* 554 F.3d at 1222.

### III. DISCUSSION

The ALJ determined that Evans had acquired sufficient quarters of coverage to remain insured through December 31, 2013. AR 12. At step one, the ALJ found that Evans had not engaged in substantial gainful activity since her alleged onset date of July 12, 2010. AR 14. At step two, the ALJ concluded that Evans suffers from a severe combination of impairments consisting of

3

1   degenerative lumbar spine, depression, anxiety, degenerative changes of the right knee,

2   fibromyalgia, diabetic neuropathy involving sensory deficit, and obesity.  *Id.*  At step three, the ALJ

3   found that Evans's impairments do not meet or medically equal an impairment in the Listings.  AR

4   15.

5         At step four, the ALJ determined that Evans has the RFC to perform sedentary work with a

6   limitation of only occasional contact with the public.  AR 17.  At the hearing, the vocational expert

7   ("VE") opined that Evans's prior work as an accounts receivable supervisor best fit under the

8   *Dictionary of Occupational Titles* ("DOT") code number 210.382-014, which describes the position

9   of "Bookkeeper."  AR 42; *see also* DOT 210.382-014 (4th Ed. 1991), available at 1991 WL

10  671821.[3]  The DOT identifies the position of "Bookkeeper" as sedentary, and describes it as

11  follows:

> Keeps records of financial transactions for establishment, using calculator and computer: Verifies, allocates, and posts details of business transactions to subsidiary accounts in journals or computer files from documents, such as sales slips, invoices, receipts, check stubs, and computer printouts.  Summarizes details in separate ledgers or computer files and transfers data to general ledger, using calculator or computer.  Reconciles and balances accounts.  May compile reports to show statistics, such as cash receipts and expenditures, accounts payable and receivable, profit and loss, and other items pertinent to operation of business.  May calculate employee wages from plant records or time cards and prepare checks for payment of wages.  May prepare withholding, Social Security, and other tax reports.  May compute, type, and mail monthly statements to customers.  May be designated according to kind of records of financial transactions kept, such as Accounts-Receivable Bookkeeper (clerical), and Accounts-Payable Bookkeeper (clerical).  May complete records to or through trial balance.

20  DOT 210.382-014, available at 1991 WL 671821.  The VE testified that 1.6 million bookkeeper

21  jobs exist in the national economy, and 30,000 bookkeeper jobs exist in the local economy.  AR 43.

22  The VE opined that one-third of those jobs require only occasional contact with the public.  *Id.*  The

23  ALJ relied on the VE's testimony in concluding that Evans's past relevant work was as a

24  bookkeeper, and that Evans retains the RFC to work as a bookkeeper despite the limitation that she

---

[3] The DOT is a publication issued by the United States Department of Labor.  U.S. Dep't Lab. Website, http://www.oalj.dol.gov/libdot.htm (last visited January 16, 2014).  The DOT last was updated in 1991, and since then it has been replaced by an online database known as the Occupational Informational Network.  *Id.*  However, applicable regulations continue to recognize the DOT as "reliable job information" that may be used by the Social Security Administration in determining whether particular jobs exist in significant numbers in the national economy.  *See* 20 C.F.R. § 404.1566(d)(1).

4

United States District Court
For the Northern District of California

have only occasional contact with the public.  AR 20-21.

Evans does not challenge the ALJ's determinations at steps one, two, and three, or the ALJ's characterization of her RFC.  However, she challenges the ALJ's conclusion that her past relevant work was as a bookkeeper, arguing that her past relevant work more properly is categorized under the DOT classification of "Supervisor, Accounts Receivable," and alternatively, that the DOT does not apply in this case.

**A.      Proper DOT Classification**

At the hearing, Evans described her job at the skilled nursing facility as follows:

> I was considered accounts receivable and resident trust manager and part-time receptionist. . . .  for four hours a day I would answer phones, page different people for calls, meet and greet the public, deal with the residents for their trust item issues. The billing was farmed out.  I would deal with the resident's families regarding non-payment, deal with collecting different things from HMO's [sic], that type of thing.

AR 30.  Evans argues that in characterizing this job as falling within the DOT classification of "Bookkeeper," the VE and ALJ focused solely upon bookkeeping *aspects* of her job and failed to take into account other aspects of the job (e.g., answering telephones, paging people, greeting the public, dealing with residents, and dealing with residents' families).

Evans contends that her past relevant work more properly is characterized as falling within the DOT classification of "Supervisor, Accounts Receivable."  Evans fails to provide a citation for this classification.  In her motion for summary judgment, she states that the DOT description of "Supervisor, Accounts Receivable" is attached to her motion at Exhibit A.  *See* Pl.'s Mot. at 12 n.88, ECF No. 23.  However, Exhibit A contains only the DOT description of "Bookkeeper."  *See* Ex. A, ECF No. 23-2.  In her response to the Commissioner's cross-motion for summary judgment, Evans acknowledges this error, and states that the DOT description of "Supervisor, Accounts Receivable" is attached to her response as Exhibit A.  *See* Pl.'s Resp. Br. at 2 n.2, ECF No. 25.  However, no exhibits are attached to Evans's response brief.  *See id.*

DOT 214.137-022 describes the position of "Supervisor, Accounts Receivable" (alternatively referred to as "Billing Supervisor") as follows:

> Supervises and coordinates activities of workers engaged in tracing sources of error and correcting billing records for gas, electric-power, and water supply customers, and in processing records for advance or final billings: Interprets work procedures for subordinates.  Confers with subordinates to resolve procedural problems in tracing

5

1
2
3
4
5
>        sources of error.  Reviews and corrects customer accounts to determine amounts over
>        or under paid as result of irregular connection (meter tampering) investigations.
>        Prepares corrected bills to reconcile errors in meter readings, using calculator.
>        Traces source and corrects customer accounts for errors in billing rates, misapplied
>        credits, or identifying information, such as name and address received from
>        customer.  Confers with employees of other departments to trace payments on bills
>        under investigation by collection department and to give information pertaining to
>        accuracy of charges on customer's bills.  Performs other duties described under
>        SUPERVISOR (clerical) Master Title.

DOT 214.137-022 (4th Ed. 1991), available at 1991 WL 671867.  While this description's references to billing records of gas, electric-power, and water supply customers do not appear to fit Evans's past relevant work in a skilled nursing facility, the Court has been unable to locate any other DOT position identified as "Supervisor, Accounts Receivable."  Moreover, Evans quotes from this description verbatim in arguing that the duties of "Supervisor, Accounts Receivable," fit her past relevant work more closely than the duties of "Bookkeeper."  *See* Pl's Mot. at 12, ECF No. 23.

In light of Evans's failure to provide a reference for the "Supervisor, Accounts Receivable" position that she contends most properly describes her past relevant work, and the obvious inapplicability of the only DOT position that the Court could locate with this title (describing supervision of billing records for gas, electric-power, and water supply customers), the Court concludes that Evans has failed to demonstrate that the ALJ erred in concluding that her past relevant work was as a bookkeeper.  Even if application of the "Supervisor, Accounts Receivable" tittle were at all plausible, application of the "Bookkeeper" title is at least equally plausible given the testimony of the VE.  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.

**B.     Application of the DOT**

Evans makes the alternative argument that her past relevant work has significant elements of two or more occupations, and thus that the DOT does not apply in this case.  She relies heavily upon the Ninth Circuit's decision in *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985).  In *Valencia*, the claimant had past relevant work as a kitchen helper in nursing homes and as an agricultural laborer. *Id.* at 1086.  As a kitchen helper, Valencia had cooked and prepared food, washed dishes, and carried food trays, which tasks frequently involved the lifting and carrying of heavy industrial-size kitchenware.  *Id.*  As an agricultural laborer, Valencia had hoed and harvested tomatoes, harvested

cherries, and sorted tomatoes. *Id.* The ALJ classified this past relevant work as "medium," and concluded that Valencia was not disabled because she retained the RFC to do medium work. *Id.* at 1085-86. Valencia argued to the Appeals Council that the ALJ had erred in concluding that she retained the RFC to do medium work. *Id.* at 1085. The Appeals Council did not address that issue when it denied her request for review; instead, the Appeals Council concluded that Valencia had past relevant work that could be categorized as light work, and thus that she could perform her past relevant work even if she was limited to light work rather than medium work. *Id.*

In reversing this decision, the Ninth Circuit surmised that "the unexpressed finding of the Appeals Council was that tomato sorting, one of the many tasks Valencia performed during her employment as a farm worker, constituted the past relevant work . . . [and that] tomato sorting should be classified as 'light' work." *Id.* at 1086. The Ninth Circuit found this reasoning to constitute legal error, holding that, "Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act." *Id.* The court concluded that when Valencia's past relevant work was considered as a whole, both the position of kitchen helper and the position of agricultural laborer properly were classified as medium work. *Id.* at 1087.

Evans argues that, like the Appeals Council in *Valencia*, the ALJ in the present case improperly focused on only one aspect of her past relevant work and ignored other aspects that would alter the analysis. *Valencia* is factually distinguishable from the present case. Unlike the Appeals Council in *Valencia*, the ALJ did not simply seize upon the least demanding function of Evans's past relevant work. To the contrary, the ALJ relied upon the testimony of a VE, who concluded that Evans's past relevant work most properly was classified as "Bookkeeper" under the DOT. When Evans's attorney questioned the VE as to why he thought bookkeeper was the appropriate classification, the VE testified that he had considered medical billing as an alternative classification, but that he thought the bookkeeper classification better captured the aspects of Evans's past relevant work that involved interacting with others. AR 45. An ALJ is permitted to rely upon the testimony of a VE. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Absent a showing that the ALJ should have questioned the VE's testimony in this case, the Court concludes that the ALJ was entitled to rely upon that testimony and that the testimony constitutes substantial evidence sufficient to support the ALJ's decision.[4]

## IV. ORDER

For the foregoing reasons, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is DENIED;
2. Defendant's motion for summary judgment is GRANTED; and
3. The Clerk shall close the file.

Dated: January 21, 2014

_____
LUCY H. KOH
UNITED STATES DISTRICT JUDGE

---

[4] To the extent that Evans contends that she lacks the RFC to perform all the duties of the particular job that she held at the skilled nursing facility (e.g., duties involving significant interaction with the public), "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it *or as generally performed in the national economy*." 20 C.F.R § 404.1560(b)(2) (emphasis added).